**IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CNA FINANCIAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NSIC HOLDINGS LLC d/b/a LIBERTY | ) | Case No. _____ |
| AUTO WARRANTY, ANTHONY HODEL, | ) | |
| INDIVIDUALLY, AND ANTHONY | ) | |
| HODEL d/b/a HODEL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff CNA Financial Corporation ("CNA" or "Plaintiff") states the following for its

complaint against defendants NSIC Holdings LLC ("NSIC"), Anthony Hodel, individually, and

Anthony Hodel d/b/a Hodel Holdings, LLC ("Hodel") (collectively "Defendants"):

### INTRODUCTION

1.      This is a civil action arising under the United States Trademark Act of 1956, as

amended, 15 U.S.C. § 1501, *et. seq.* (the "Lanham Act") for trademark infringement, false

advertising, unfair competition, and common law unfair competition.

2.      Defendants purport to offer customers vehicle service contracts and vehicle

warranties and falsely advertise and represent that Defendants' obligations to their customers are

"bonded and insured" by "CNA Surety."  CNA and its subsidiaries do not insure or bond

Defendants or any of Defendants' obligations and the parties have no business relationship.

1

Defendants' unlawful use of the famous CNA mark and their false statements to consumers violate CNA's rights and has caused damage to CNA.

## PARTIES

3.     Plaintiff CNA is a Delaware corporation with its headquarter offices located in Chicago, Illinois.

4.     Defendant NSIC is an Ohio corporation with a registered corporate address at 157 Carriage Dr. #103, Chagrin Falls, OH 44022 that uses the fictitious name Liberty Auto Warranty. NSIC's website is located at http://www.libertyautowarranty.com (the "Website"), and states that NSIC is located in Chicago, Illinois.

5.     The libertyautowarranty.com domain name (the "Domain Name") is registered to Hodel Holdings, LLC.  Upon information and belief, Hodel Holdings, LLC does not exist as a legal entity and is a fictitious name used by Hodel or, alternatively, is an entity owned and controlled by Hodel.  The WHOIS information identifying Hodel Holdings, LLC as the owner of the Domain Name is attached hereto as **Exhibit A**.

6.     Defendant Anthony Hodel is an individual currently incarcerated at Lorain Correctional Institution located at 2075 Avon Belden Rd, Grafton, OH 44044.  **Exhibit B**. Hodel is the owner and registered agent of NSIC Holdings, LLC.  **Exhibit C.**

7.     Plaintiff is informed and believes that Hodel is the sole owner of NSIC.

8.     At all times relevant to this action, Hodel was the agent, servant, employee, partner, joint venturer, or surety of NSIC and acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the acts alleged herein related to NSIC.

9.     Plaintiff is informed and believes and thereon alleges that there exists, and at all times relevant existed, a unity of interest and ownership between NSIC and Hodel such that any individuality and separateness between each of them have ceased, and Hodel is the alter ego of NSIC.  Adherence to the fiction of separate existence between Hodel and NSIC would permit an abuse of the corporate privilege, sanction a fraud and promote injustice.  On information and belief, Hodel has a material interest in the ownership, control, governance, management, finances and/or assets of NSIC, and operates and controls NSIC in a manner establishing that there is no legal distinction between Hodel as an individual and NSIC as an entity, that Hodel is using NSIC to present a veneer of business legitimacy, while extracting funds from the entity for his personal use.

10.     On information and belief, at all times relevant herein, NSIC was a mere shell and conduit to shield Hodel from personal liability, but which he used to satisfy personal obligations.

11.     On information and belief, Hodel operates NSIC as a pass-through entity without adequate capitalization for the purpose of promoting a fraud and creating a substantial injustice on CNA, in order to shield Hodel from personal liability.  On information and belief, at all relevant times herein, NSIC was a sham entity without substantial capital or assets, and was conceived, intended and used by Hodel as a device to avoid liability.

12.     On information and belief, Hodel commingled funds and treated the assets of NSIC as his own and engaged in self-dealing.  Hodel completely controlled, dominated, managed, and operated NSIC and intermingled the assets of NSIC to suit his individual convenience.

13.     On information and belief, at the direction of Hodel, NSIC failed to follow corporate formalities, including but not limited to: (i) the failure to conduct corporate meetings

of the members, (ii) the failure to take or maintain minutes of any company proceedings, and (iii) the failure to have company assets.

14.     The Court in equity should pierce the corporate veil in order to avoid injustice and prevent Hodel's fraud.

## JURISDICTION AND VENUE

15.     This action arises under 15 U.S.C. §§ 1114 and 1125 (a) & (d) and under the common law of the State of Illinois.  This Court has subject matter over these claims pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1121 (Lanham Act claims), and 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) as this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     This Court has personal jurisdiction over the Defendants under the Illinois Long-Arm Statute because Defendants have transacted business in Illinois by engaging or purporting to engage in the complained-of activities in Illinois and causing injury to CNA in this State. While NSIC's registered address is located in Ohio, the Website and the materials on the Website state that NSIC's place of business is located in Chicago, Illinois, establishing that Defendants were targeting Illinois consumers in this District.  Moreover, NSIC caused injury in this State by marketing its services to Illinois consumers using its interactive website located at www.libertyautowarranty.com.

17.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2), because a substantial part of the events and omissions giving rise to these claims occurred here and because Defendants are subject to personal jurisdiction here.  Further, Defendants have committed acts of

infringement, unfair business practices, and fraud in this District and have caused injury in this District.

## GENERAL ALLEGATIONS

18.     CNA is an insurance holding company.  CNA's subsidiaries are engaged in the business of insurance, risk management, surety and underwriting.

19.     CNA is the owner of a suite of U.S. Trademark Registrations directed to the trademark **CNA** (the "CNA Marks").  Indeed, use of the CNA Marks dates back to December 21, 1964.  CNA's U.S. Trademark Registrations for the CNA Marks include at least the following:

   a. U.S. Trademark Registration No. 0802010 for the mark **CNA** for use in connection with "underwriting accident, [health,] liability, property, marine, and multiple peril insurance and providing reinsurance and bonds" (the "'010 Registration").  The '010 Registration is incontestable under 15 U.S.C. § 1065.

   b. U.S. Trademark Registration No. 5026836 for the mark **CNA** for use in connection with "Extended warranty services, namely, service contracts; . . . Financial guarantee and surety; . . . Third-party extended warranty services, namely, vehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing" (the "'836 Registration") (emphasis added);

   c. U.S. Trademark Registration No. 3742499 for the mark **CNA** for use in connection with "insurance underwriting services for all types of insurance." (the "'499 Registration");

    d.  U.S. Trademark Registration No. 1043744 for the mark **CNA** for use in connection with "insurance underwriting services." (the "'744 Registration")

    e.  U.S. Trademark Registration No. 2169594 for the mark **CNA** for use in connection with "underwriting services in the fields of life, accident, health, annuities, liability, property, marine, credit, residual value, and multiple peril insurance; <u>underwriting fidelity and surety bonds</u>, and underwriting reinsurance; loss control services for worker's compensation, general liability, property and automobile risks; risk management, and insurance claims adjusting and administration." (the "'594 Registration")(emphasis added) (the '010, '836, '833, '499, '744, and '594 Registrations are collectively referred to as the "CNA Registrations").

20.    Copies of the CNA Registrations are attached as **Exhibit D**.

21.    Upon information and belief, Defendants had actual notice of the CNA Marks. In the alternative, Defendants had constructive notice of the CNA Marks, because each of the CNA Registrations published for opposition and registered two years or more before the date of this Complaint.

22.    CNA allows certain of its subsidiaries to use the CNA Marks for marketing purposes, including as part of the marketing name "CNA Surety" in connection with surety and bonding services and products. CNA or its subsidiaries own the cnasurety.com domain name and its subsidiaries offer surety and bonding services and products through the www.cnasurety.com website under the heading CNA SURETY. **Exhibit E**.

23.     Plaintiff, through its subsidiaries, has expended considerable resources in building the goodwill associated with the CNA Marks in connection with the services provided thereunder.

24.     CNA, through its subsidiaries, has continuously marketed its services throughout the United States, including this judicial district.  Based on their consistent and extensive use, the CNA Marks have become widely and favorably known, and have acquired extensive goodwill.

25.     CNA is currently, and at all relevant times hereto has been, the exclusive owner of all property rights in the CNA Marks.

26.     Under the Lanham Act, Plaintiff has exclusive rights to the CNA Marks with respect to the services identified in the CNA Registrations.

## <u>HODEL'S HISTORY OF FRAUDULENT CONDUCT</u>

27.     Hodel has a documented history of purportedly engaging in fraudulent scams and illegal conduct.  As mentioned above, Hodel is currently in prison at Lorain Correctional Institution.

28.     According to published reports, Hodel has a history of offering fraudulent warranty and/or vehicle service contracts to consumers.  **Exhibit F**.

29.     According to published reports, Hodel previously owned and operated a company named Platinum Warranty Corporation, which claimed to have received up to $27 Million a year in premiums from consumers, but failed to reimburse its policy holders for repair claims that it approved.

30.     According to published reports, over 825 consumers complained about these deceptive practices.

31.     According to published reports, although small claims courts across the country awarded consumers damages for breach of the vehicle service contracts sold by Platinum Warranty, Hodel paid himself hundreds of thousands of dollars through shell companies shortly before filing Chapter 11 bankruptcy protection.

**DEFENDANTS' USE OF CNA'S MARKS TO PERPETRATE A NEW SCAM**

32.     CNA has learned that Defendants' Website is offering customers vehicle service contracts and related vehicle warranties and passing off their contracts as being bonded and insured by CNA Surety.

33.     CNA learned of this when its subsidiary was contacted by consumers that purchased contracts from Defendants believing that their contracts were bonded and insured by CNA Surety.  These customers explained that they had submitted claims to Defendants seeking payment and their claims were ignored by Defendants.

34.     Once CNA's subsidiary was notified of this confusion in the marketplace, it investigated the consumer claims and learned that Defendants' agreements, posted on their Website, state that all claims are "Bonded and Insured by **CNA Surety**."  **Exhibit G** (pages 5, 9 and 14) (highlighted portions of **Exhibit G** are for emphasis only and do not appear on Defendants' agreements on the Website).

35.     Defendants do not have any business relationship with CNA, its affiliates, or subsidiaries, and CNA and its affiliates and subsidiaries never agreed to bond or insure Defendants or any of Defendants' obligations.

36.     Defendants are willfully and unlawfully trading on and profiting from the use and advertisement of the CNA Marks and deceiving the public into thinking that CNA is affiliated with Defendants.

37.     Upon information and belief, the Website also falsely states that it has an "A+" business rating from the Better Business Bureau.  The Better Business Bureau's website states that Liberty Auto Warranty is not accredited by the Better Business Bureau and advises that it has sent written notices to Liberty Auto Warranty "requesting that the business immediately cease claiming or implying in any way that it is an Accredited Business by removing the BBB Torch logo from its website."  **Exhibit H**.

38.     Upon information and belief, Defendants are not affiliated with any automobile manufacturer, and the warranties and/or vehicle service contracts sold through the Website are not backed by sufficient financial resources to satisfy the financial requirements set forth in 215 ILCS 152/15.

39.     The automobile warranties and vehicle service contracts sold through the Website are, upon information and belief, a scam and Defendants have no intention of fulfilling obligations enumerated in the contracts attached as **Exhibit G**.

40.     Accordingly, each day that the Website remains active more consumers are likely to be duped into purchasing a fraudulent service contract or warranty from Defendants, erroneously believing there is an association between CNA and Defendants.

41.     The phone number that Defendants provide to their customers on the Website is not functioning, and the customers who have contacted CNA's subsidiary did so after failing to receive a response from Defendants to their inquiries.

42.     There is actual confusion in the marketplace regarding whether CNA or its subsidiaries bonded or insured, or is otherwise responsible for or affiliated with, Defendants and their business activities.

43.     Defendants' use of the CNA Marks infringes Plaintiff's rights, has caused confusion among customers and the public, and has resulted in irreparable damage to CNA and damaged its goodwill and reputation.

44.     Defendants are unlawfully using the CNA Marks in a way that has, and will continue to cause confusion, amongst customers as to the nature of CNA's relationship to Defendants and their services.

45.     Defendants knowingly and willfully use the CNA Marks so as to suggest that Defendants' services originate with, or are sponsored or endorsed by or affiliated with CNA.

46.     CNA is informed and believes that Defendants have acted in bad faith with the intent to profit from the goodwill associated with the CNA Marks, and acted with full knowledge of their lack of any intellectual property rights or justification to use the CNA Marks.

47.     CNA's subsidiary contacted Defendants numerous times demanding that Defendants cease their wrongful activities, but Defendants have failed to do so.

## COUNT I
## TRADEMARK COUNTERFEITING
### (Lanham Act Section 32 (15 U.S.C. 1114)

48.     CNA incorporates the foregoing paragraphs by reference as though fully set forth herein.

49.     Plaintiff owns all rights, title and interest in and to the CNA Marks and the CNA Registrations.

50.     The CNA Marks and the goodwill of the business associated with them in the United States are of great and incalculable value, are highly distinctive, and have become universally associated in the mind of the public with insurance, surety bonds, and insurance claims administration services of the highest quality and reputation.

51.     Without CNA's authorization or consent, and with knowledge of CNA's well-known prior rights in the CNA Marks, Defendants have reproduced, counterfeited, copied, and sold counterfeit services to the consuming public of the United States in direct competition with CNA's subsidiaries' sale of genuine vehicle service contracts, in or affecting interstate commerce.

52.     Defendants have counterfeited and infringed the CNA Marks. Defendants' use of the CNA Marks is without Plaintiff's authorization or consent.

53.     Defendants' use of copies or simulations of the CNA Marks on the contracts attached as **Exhibit G** is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' services, and is likely to deceive the public into believing that Defendants' services originate from, are associated with, or are otherwise authorized by CNA, all to the damage and detriment of CNA's reputation, goodwill, and profits. Accordingly, Defendants are using reproductions, counterfeits, and copies of the federally registered CNA Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     Defendants' conduct exploits the goodwill and reputation associated with Plaintiff and Plaintiff's registered CNA Marks, and has tarnished the CNA Marks.

55.     Neither CNA nor its subsidiaries have control over the quality of Defendants' counterfeit services and cannot honor vehicle repair service obligations incurred on behalf of Defendants. Because of the very real likelihood of confusion as to the source of Defendants' counterfeit services, CNA's reputation and valuable goodwill in the CNA Marks are subject to Defendants' unscrupulous tactics.

56.     Defendants' unauthorized use of the CNA Marks as set forth above has resulted, and will continue to result, in Defendants unfairly benefitting from Plaintiff's subsidiaries'

advertising and promotion, and profiting from Plaintiff's reputation and its registered CNA

Marks, to the substantial and irreparable injury of the public, Plaintiff, and the CNA Marks, and

the substantial goodwill represented thereby.

57.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade

on the goodwill associated with the CNA Marks to Plaintiff's great and irreparable injury.

58.     Upon information and belief, in committing these wrongs, Defendants acted

willfully within the meaning of 15 U.S.C. § 1117(c)(2).

59.     Upon information and belief, Defendants have made and will continue to make

substantial profits to which they are not entitled in law or equity.

60.     Upon information and belief, Defendants intend to continue their infringing acts,

unless restrained by this Court.

61.     Defendants' acts damaged and will continue to damage Plaintiff, and Plaintiff has

no adequate remedy at law.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
### (Lanham Act Section 32 (15 U.S.C. § 1114))

62.      CNA incorporates the foregoing paragraphs by reference as though fully set forth

herein.

63.     Plaintiff owns all rights, title and interest in and to the CNA Marks and the CNA

Registrations.

64.     Defendants have adopted and used the CNA Marks in commerce, in connection

with their attempts to sell vehicle service contracts and auto warranties, stating that the foregoing

are "bonded and insured by CNA Surety."

65.     Defendants' use of the CNA Marks has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from CNA, are associated or connected with CNA, or have the sponsorship, endorsement, or approval of CNA.

66.     Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among consumers and, additionally, cause injury to CNA's goodwill and reputation as symbolized by the CNA Registrations, for which CNA has no adequate remedy at law.

67.     At the time Defendants adopted and used the CNA Marks, Defendants were aware that the CNA Marks and CNA Registrations were owned by CNA and that CNA had, through its subsidiaries, used the CNA Marks in connection with the sale of CNA insurance and insurance-related products and services.

68.     Defendants' actions are and were done with intentional, willful, and malicious intent to trade on the goodwill associated with the CNA Marks and CNA Registrations.

69.     Defendants' use of the CNA Marks caused actual confusion among consumers and is likely to continue to confuse, deceive and mislead consumers regarding the source, sponsorship, authenticity and quality of Defendants' products and services.

70.     Defendants' intent in using the CNA Marks is to confuse, deceive and mislead consumers.

71.     CNA has suffered and will continue to suffer injury and damages as a result of Defendants' misconduct.  In particular, Defendants have caused and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to CNA's goodwill and customer relationships.  Consequently, CNA is entitled to injunctive relief

and to recover Defendants' profits, actual damages, trebled profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT III**
**FEDERAL UNFAIR COMPETITION**
**(Lanham Act Section 43(a) (15 U.S.C. § 1125(a))**

72.      CNA incorporates the foregoing paragraphs by reference as though fully set forth herein.

73.      Plaintiff owns all rights, title and interest in and to the CNA Marks and common law rights to the CNA SURETY mark.

74.      Defendants' use of the CNA Marks and CNA SURETY has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' vehicle service contracts originate from CNA, are associated or connected with CNA, or have the sponsorship, endorsement, or approval of CNA.

75.      Defendants have made false representations, false descriptions, and false designations of origin of its services, and have infringed common law rights in the CNA Marks and CNA SURETY, in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to CNA's goodwill and reputation as symbolized by the CNA Registrations, for which Plaintiff has no completely adequate remedy at law.

76.      Defendants' actions are and were done with intentional, willful, and malicious intent to trade on the goodwill associated with the CNA Marks and the CNA SURETY mark, to Plaintiff's great and irreparable injury.

77.     Defendants have caused and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT IV
## FEDERAL FALSE ADVERTISING
### (Lanham Act Section 43(a) (15 U.S.C. § 1125(a))

78.     CNA incorporates the foregoing paragraphs by reference as though fully set forth herein.

79.     Defendants have disseminated advertising materials that are untrue and/or misleading, and have used a false description of their products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

80.     Defendants have advertised and promoted on the Website that their vehicle service contracts are bonded and insured by CNA Surety.

81.     Defendants' statement is a false statement of fact about their products, which misrepresents the nature of their products.

82.     Because of Defendants' false statements, consumers are likely to be deceived into believing that Defendants are affiliated with CNA, and purchase a vehicle service contract from Defendants believing they are purchasing an extended warranty that is bonded and insured by CNA or its subsidiaries.

83.     CNA is harmed by Defendants' false statements because consumers, being deceived into thinking that Defendants vehicle service contracts are bonded and insured by CNA or its subsidiaries, will associate CNA with falsely advertised services.

84.     Defendants' acts complained of herein have been committed willfully and with knowledge that such conduct falsely describes or represents the vehicle service contracts that

Defendants sell are bonded and insured by CNA or its subsidiaries, with the intent to cause confusion, and mistake, or to deceive the public.

85.     Defendants threaten to continue the conduct complained of herein, and unless enjoined, will continue such conduct causing irreparable harm to CNA for which CNA has no adequate remedy at law.  CNA has also suffered damages for this conduct in an amount yet to be determined.

86.     As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to damages and a permanent injunction enjoining and restraining Defendants and their respective agents and assigns from engaging in the above mentioned acts.

## COUNT V
## ILLINOIS DECEPTIVE TRADE PRACTICES
### (815 Ill. Comp. Stat. § 510/1 *et seq.*)

87.     CNA incorporates the foregoing paragraphs by reference as though fully set forth herein.

88.     Defendants' use of the CNA Marks has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from CNA, are associated or connected with CNA, or have the sponsorship, endorsement, or approval of CNA.

89.     CNA has sustained injury to its business' reputation and goodwill, and Defendants have unlawfully derived income and profits from its wrongful acts.

90.     Unless enjoined by this Court, these acts by Defendants will continue to violate CNA's rights and cause injury to CNA.

91.     CNA has no adequate remedy at law.

92.     By virtue of the aforementioned acts, Defendants have engaged in conduct in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq*.

## COUNT VI
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 Ill. Comp. Stat. § 505/1 et seq.)

93.     CNA incorporates the foregoing paragraphs by reference as though fully set forth herein.

94.     The Illinois Consumer Fraud and Deceptive Business Practices Act expressly prohibit "any practice described in Section 2 of the Uniform Deceptive Practices Act." 815 ILCS § 505/2.

95.     Defendants are using the CNA Marks without permission from CNA, and thus willingly, knowingly, and intentionally violating CNA's rights by its unauthorized use, as to suggest to the public that there exists an association or affiliation between CNA and Defendants' services, or that CNA has sponsored or endorsed Defendants' services, when it has not.

96.     Defendants' conduct causes and is likely to cause consumer confusion as to, and misrepresents, the origin, quality, characteristics, and source of its goods.

97.     The public and the market generally, by way of Defendants' acts alleged herein, will be harmed by the consumer confusion caused by Defendants' misrepresentation of the origin quality, characteristics, and source of its services.

98.     By its acts, Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled to receive.

99.     CNA, by way of Defendants' acts alleged herein, has suffered, and will continue to suffer damage and competitive injury to its business, reputation, and goodwill.

100.     By virtue of the aforementioned acts, Defendants have engaged in conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*

## COUNT VII
## COMMON LAW UNFAIR COMPETITION

101.     CNA incorporates the foregoing paragraphs by reference as though fully set forth herein.

102.     CNA owns all right, title and interest in and to the CNA Marks.

103.     Defendant's use of the CNA Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from CNA, or are associated or connected with CNA, or have the sponsorship, endorsement, or approval of CNA.

104.     The natural and probable tendency and effect of Defendants' conduct is to deceive the public so as to pass off the services or business of Defendants as and for that of CNA or its subsidiaries.  Defendants have caused and are likely to continue to cause substantial injury to the public and to CNA, and CNA is entitled to injunctive relief and to recover actual damages, costs, and reasonable attorneys' fees.

105.     Defendants' wrongful conduct was willful and deliberate or recklessly indifferent to the rights of CNA, warranting an award of punitive damages under Illinois common law.

## PRAYER

**WHEREFORE**, Plaintiff prays the Court enter judgment in its favor and award them relief as follows:

1.  That the Court immediately enjoin Defendants from further use of the Website and Domain Name and issue a court order requiring that the domain registrar,

Networksolutions.com, transfer the Domain Name to CNA and shut down the Website;

2. That the Court permanently restrain and enjoin Defendants, their agents, servants, employees, and other person in active concert with Defendants from any and all further use of the CNA Marks and any other name or mark confusingly similar to the CNA Marks, including but not limited to, CNA and CNA SURETY;

3. That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve upon CNA within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

4. That the Court order that Defendants take steps to inform its current and past customers or other people confused by Defendants' wrongdoing that CNA is not affiliated with Defendants or responsible for Defendants' obligations;

5. That CNA be awarded all damages incurred as a direct and proximate cause of Defendants' unlawful conduct;

6. That CNA recover from Defendants exemplary and punitive damages, based on its willfulness and/or reckless indifference to CNA's trademark rights, available under Illinois common law;

7. That CNA recover the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

8. That Defendants pay CNA's reasonable attorneys' fees, based on its willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a) and 815 Ill. Comp. Stat. §510/3;

9. That CNA be awarded prejudgment interest;

10. That CNA be awarded post-judgment interest;

11. That because of the exceptional nature of this case resulting from Defendants' deliberate and willful infringing actions, the Court award to CNA all reasonable attorneys' fees, costs, and disbursements incurred by them as a result of this action pursuant to 15 U.S.C. §1117(a); and

12. That the Court grant CNA such other and further relief as the Court may deem just and proper.

## **<u>REQUEST FOR JURY TRIAL</u>**

Plaintiff requests a jury trial for all causes of action so triable.

DATED: January 10, 2020               Respectfully submitted,

*s/ Bryan P. Sugar*

Bryan P. Sugar
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Tel. 312.345.1718
Fax 312.345.1778
Bryan.Sugar@lewisbrisbois.com

Attorney for Plaintiff CNA Financial Corporation